1

2

3

4

5

**UNITED STATES DISTRICT COURT**

6

**EASTERN DISTRICT OF CALIFORNIA**

7

8 | CHRISTINE ANNE MCNELLY,

CASE NO. 1:14-CV-828-SMS

9 | Plaintiff,

10 | v.

ORDER AFFIRMING AGENCY'S
DENIAL OF BENEFITS AND ORDERING
JUDGMENT FOR COMMISSIONER

11 | CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12 | Defendant.

(Doc. 14)

13

14

15       Plaintiff Christine Anne McNelly, by her attorney, seeks judicial review of a final decision

16 of the Commissioner of Social Security ("Commissioner") denying her application for disability

17 insurance benefits pursuant to Title II of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the

18 "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted,

19 without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.

20 Following a review of the complete record and applicable law, this Court finds the decision of the

21 Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a

22 whole and based on proper legal standards.

23    **I.    Background**

24       A.  Procedural History

25       In June 2011, Plaintiff applied for disability insurance benefits alleging an onset of

26 disability date of January 19, 2006. The Commissioner initially denied the claims on October 4,

27 2011, and upon reconsideration again denied the claims on March 22, 2012.  On April 11, 2012,

28 Plaintiff filed a timely request for a hearing.

On November 5, 2012, and represented by counsel, Plaintiff appeared and testified at a hearing presided over by Trevor Skarda, Administrative Law Judge ("the ALJ").  See 20 C.F.R. 404.929 et seq.  An impartial vocational expert, Lorian I. Hyatt ("the VE"), also appeared and testified.

On December 13, 2012, the ALJ denied Plaintiff's application.  The Appeals Council denied review on April 24, 2014.  The ALJ's decision thus became the Commissioner's final decision.  See 42 U.S.C. § 405(h).  On May 30, 2014, Plaintiff filed a complaint seeking this Court's review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

B.  Plaintiff's Testimony

At the administrative hearing, Plaintiff was about fifty-nine years old. She testified that she worked for several years inspecting canned fruit, full-time and seasonally. When the plant closed in 1995, she went to work at another plant, but had to start at the bottom and, after two years, could not perform the job that required standing for eight hours a day. She went to work at Wal-Mart as a stocker for about three months, but stopped because it was too hard, and her wrists, back, and hip were hurting. She then worked as an in-home caregiver from 1998 to 2005. She worked part time –about three days a week, four hours a day. She thought the caregiving would require less lifting, but she had to lift the patients, bathe them, and help them in and out of cars. Plaintiff was tired and had pain in her wrists, back, hip, and neck. She stopped working because it was "getting too much for [her] to do" and the job was very emotional. She did not feel that she could perform this work full-time because it was physically difficult and it intensified her pain. Two or three times a month she would not go to work because she was in so much pain she could not walk.

Around 2006 Plaintiff starting taking more breaks during housework. On a good day, she would get up and do some house-keeping, such as laundry, vacuuming, and cleaning. She would clean for about thirty minutes before starting to hurt, so she would stop and rest for about fifteen to twenty minutes by sitting down and maybe having some tea. She also testified that in 2006 she "couldn't sit for any length of time."

At the hearing, she stated that her overall condition had not changed much since 2006. If

1    she avoided strenuous work, her condition was better. If she pushed herself, her condition was

2    worse. She could not sit for too long without her hips, back, and neck hurting. She had a computer,

3    which she used for twenty to thirty minutes at a time. She could do some work for thirty minutes

4    and then sit for a break, but by the afternoon she was "shot" and would take a nap. She would

5    watch TV and not do much else because she did not want to push herself any further. Her husband

6    did most of the grocery shopping but she sometimes went to the store to get small things.

7         Plaintiff testified that she had problems sleeping, was taking medication to help her sleep,

8    but she still woke during the night.  She had taken a nap every day for about two years.

9         C.  <u>Relevant Medical Record</u>

10        From 2005 through 2009, Plaintiff sought treatment from her primary care physician, Erin

11   Kiesel, D.O. She diagnosed Plaintiff with arthralgias, myalgias, bursitis, hypertension, anxiety.

12   She consistently noted that Plaintiff's hypertension and high blood pressure were well-controlled.

13   In April 2006, she experienced recurrent chest pain. AR 207, 208. She had been hospitalized in

14   April 2006 after presenting to the emergency room for chest pain. AR 326-332. It was determined

15   that the chest pain was not due to coronary artery disease. In August 2006, Plaintiff had heart

16   palpitations, with dizziness and headaches, but in February 2007 Dr. Kiesel noted that the heart

17   palpitations were resolved. AR 197, 199, 201. Also in August 2006, Plaintiff complained of head

18   pain, nausea, and decreased vision. AR 203. An MRI of the brain from August 2006 revealed no

19   abnormalities. AR 222. In 2007, Plaintiff visited Dr. Keisel three times. She did not see Dr. Kiesel

20   between October 2007 and July 2008, and in 2008 visited Dr. Keisel twice. In July 2008, Plaintiff

21   had a second visit to the emergency room for a possible seizure. She said she was "jerking" around

22   and unable to breathe. AR 312, 321. In 2009, Plaintiff visited Dr. Kiesel five times.

23        In December 2009, Plaintiff began receiving treatment at Kaiser Permanente. The new-

24   patient progress notes noted that she had positive antinuclear antibodies (ANA), intermittent

25   mallet rash, joint pains, muscle pains, and left ventricular enlargement. Plaintiff's history of acid

26   reflux was noted, but that she had not had any symptoms in four years. The doctor noted that her

27   hip bursitis had been stable with a cortisone injection a year prior. He also noted, as did Dr.

28   Kiesel, hyperlipidemia, liver cyst, and hypertension.

In January 2010, Plaintiff began treatment from rheumatologist Win Minn Lim, M.D. In June 2010, five months after their prior appointment, Dr. Lim diagnosed Plaintiff with Sjogren's syndrome. She recommended eye drops for dry eyes, and Biotene products, floss and sugarless candy for dry mouth. In September 2010, Dr. Lim recommended the same plan. She discussed disease-modifying antirheumatic drugs (DMARDS), but Plaintiff said she would like to wait and would email Dr. Lim when she was ready to try them. AR 278. They scheduled a follow-up in six months. In April 2011, Dr. Lim recommended the same plan and Plaintiff reiterated that she wanted to wait to try DMARDS. In October 2011, Dr. Lim made the same notes and suggested a follow-up appointment in twelve months. AR 898-899. After her appointment, Plaintiff emailed Dr. Lim, indicating that she was appealing a denial of social security disability benefits and asking her to fill out the physical residual functional capacity questionnaire. AR 901.

In October 2011, Dr. Lim completed a physical residual functional capacity questionnaire for Plaintiff. AR 425. She stated that he began seeing Plaintiff in January 2010 and every four to six months thereafter. At the time of completing the questionnaire, she had seen Plaintiff four times. She diagnosed her with Sjogren's syndrome and trochanteric bursitis. She described her symptoms as pain, dryness in eyes, and dryness in mouth. She opined that emotional factors did not contribute to the severity of her symptoms and functional limitations. She opined that, in a competitive work situation, she could walk two city blocks without rest, that she could sit for two hours at a time, and stand for forty-five minutes at a time. In an eight-hour workday, she opined that she could stand less than two hours, and sit for about two hours, and that she would need to walk for about five minutes every thirty minutes. She opined that she would need an unscheduled five-minute break every sixty minutes, during which time she would sit quietly. She made some postural and manipulative restrictions as well. She estimated that she would never need to be absent from work as a result of her impairments.

In September and October 2011, Plaintiff began to email her primary care physician about abdominal pain. AR 886,893, 902. In January 2012, Plaintiff began treatment for a pancreatic mass. AR 436.

In August 2012, Plaintiff's primary care physician from 2006 through 2009, Dr. Kiesel

wrote a short note indicating that Plaintiff suffered from myalgias, arthralgias, heart palpitations, headaches, chest pain, and hip pain, but was unable to make a diagnosis. AR 872.

### D.  Vocational Expert Testimony

At the administrative hearing, the VE classified Plaintiff's past work as caregiver (DOT # 354.377-014, medium, SVP 3), retail stocker (DOT # 290.477-014, light, SVP 3), and laboratory sampler (DOT # 922.687-054, light, SVP 2). The ALJ asked the VE to assume a hypothetical person who could perform light work with no additional limitations. The VE testified that such person could perform the laboratory sampler job and the retail stocker job.

The ALJ then directed the VE to assume a second hypothetical person who was limited to sitting two hours in an eight-hour day and standing and walking less than two hours in an eight-hour day. The VE agreed that such person would be precluded from all work at any exertional level.

For the third hypothetical, the ALJ directed the VE to consider an individual who could only use their hands for gross to fine manipulation occasionally. The VE opined that this third hypothetical person could not perform Plaintiff's past work, but could perform unspecified light work.

### E.  Disability Determination

After considering the evidence, the ALJ found that Plaintiff last met the insured status requirements of the Act on December 31, 2007. He found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of disability through the date last insured. Through the date last insured, the ALJ found that Plaintiff had the following medically determinable impairments: arthralgias, hip bursitis, myalgias, and hypertension. The ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for twelve consecutive months. Therefore, the ALJ found that Plaintiff did not have a severe impairment. Hence, he determined that Plaintiff was not under a disability at any time from the alleged onset date through the date last insured (January 19, 2006-December 31, 2007).

**II.**    **Legal Standard**

    A.   The Five-Step Sequential Analysis

An individual is considered disabled for purposes of disability benefits if she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment(s) must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  In the five-step sequential review process, the burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Id.* at 1098–99; 20 C.F.R. §§ 404.1520, 416.920.

In the first step of the analysis, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, in the second step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c).  If so, in the third step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d).  If not, in the fourth step, the ALJ must determine whether the claimant has sufficient RFC, despite the impairment or various limitations to perform his past work. *Id.* §§ 404.1520(f), 416.920(f).  If

1  not, in step five, the burden shifts to the Commissioner to show that the claimant can perform

2  other work that exists in significant numbers in the national economy.  *Id.* §§ 404.1520(g),

3  416.920(g).

4              B.  Standard of Review

5         Congress has provided a limited scope of judicial review of the Commissioner's decision

6  to deny benefits under the Act.  The record as a whole must be considered, weighing both the

7  evidence that supports and the evidence that detracts from the Commissioner's decision.

8  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks

9  omitted).  In weighing the evidence and making findings, the Commissioner must apply the proper

10  legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  If an ALJ

11  applied the proper legal standards and the ALJ's findings are supported by substantial evidence,

12  this Court must uphold the ALJ's determination that the claimant is not disabled.  *See, e.g., Ukolov*

13  *v. Barnhart*, 420 F.3d 1002, 104 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g).  Substantial

14  evidence means "more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of*

15  *Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008).  It is "such relevant evidence as a reasonable mind

16  might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

17  2005). Where the evidence as a whole can support either outcome, the Court may not substitute its

18  judgment for the ALJ's, rather, the ALJ's conclusion must be upheld. *Id.*

19  **III.   Discussion**

20         Plaintiff contends that the ALJ erred at step two of the sequential analysis because (1) the

21  ALJ failed to consider each of Plaintiff's impairments, including headaches, dizziness, and

22  fatigue; (2) the ALJ did not properly consider Plaintiffs Sjogren's syndrome diagnosis; and (3) the

23  ALJ improperly dismissed treating physician Dr. Lim's opinion. Plaintiff must establish her

24  disability began before her date last insured. 20 CFR § 404.131. Plaintiff was last insured on

25  December 31, 2007.

26         A.  Step Two – Severity

27         Under the regulations, the procedure at step two is as follows:

28         At the second step, we consider the medical severity of your impairment(s). If you do not

have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. ... If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.

20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c).

The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See Id. When an impairment is slowly progressive, precisely determining the onset date, or the date the impairment became disabling, may be impossible, and must be inferred from the medical and other evidence that describe the history and symptomatology of the disease process, including the applicant's allegations and work history. SSR 83-20, 1983 SSR LEXIS 25. The ALJ's judgment how long the impairment existed at a disabling level of severity must have a legitimate medical basis. Id. Determining the proper onset date is particularly difficult when the alleged onset and date last worked are far in the past and adequate medical records are not available. Id.

B. Consideration of Plaintiff's Impairments

Plaintiff argues that the ALJ failed to consider each of Plaintiff's relevant impairments. While the ALJ found that Plaintiff had arthralgias, hip bursitis, myalgias, and hypertension, he did not mention or consider Plaintiff's headaches, dizziness, fatigue, edema, blurred vision, and anxiety.

Here, the ALJ adequately considered the medical evidence in reaching his step-two finding. The ALJ specifically mentioned that Plaintiff had reported headaches and dizziness, and that she rested often and took a nap every day. In addition, the ALJ is not required to discuss every symptom identified in the medical record. It is Plaintiff's burden to establish the severity of the impairment. The record supports the ALJ's finding that Plaintiff's combined impairments were not severe, such that they did not significantly limit her from performing work activities during the relevant time. In 2007 and 2008, Plaintiff saw her treating physician very few times. The record does not show use of prescription pain killers for her hip pain or other joint and muscle pain.

1   Plaintiff alleges that she is unable to work or do housework for longer than thirty minutes because

2   the pain is too intense. However, her medical record reflects infrequent visits during the relevant

3   time, and even during 2010 through 2012 after her Sjogren's syndrome diagnosis by her

4   rheumatologist, Dr. Lim. Dr. Lim also did not prescribe pain medication, and Plaintiff felt that her

5   pain was controlled with ibuprofen. Plaintiff continued to decline anti-rheumatic drugs over two

6   years. There is no evidence that supports a finding that the combination of Plaintiff's symptoms

7   significantly limited Plaintiff's ability to work. Dr. Kiesel noted that the heart palpitations, with

8   which she presented headaches and dizziness, were resolved. Further, Dr. Kiesel did not make any

9   diagnoses or recommend medication or treatment for any of the symptoms Plaintiff argues that the

10  ALJ left out of the step-two discussion. Plaintiff did not present any evidence that edema, for

11  example, had any effect on her ability to work or otherwise function. Thus, ALJ properly

12  considered the medical record and Plaintiff's symptom testimony in reaching his step-two finding.

13          C.  Consideration of Sjogren's Syndrome Diagnosis

14          Plaintiff argues that the ALJ found Plaintiff's impairments to be non-severe at step two

15  because she had not been diagnosed with Sjogren's syndrome until after her last date insured. The

16  ALJ refused to consider Plaintiff's rheumatology records from 2009-2011. Plaintiff argues that she

17  clearly suffered from Sjogren's syndrome as early as 2005, which is demonstrated through her

18  related symptoms in 2005 through 2009.

19          Plaintiff's argument mischaracterizes the ALJ's decision. The ALJ explicitly agrees that

20  Plaintiff exhibited symptoms of Sjogren's syndrome since 2005. More importantly, the ALJ's

21  decision is not dependent on a Sjogren's syndrome diagnosis. Plaintiff's assertion that the ALJ

22  would have found her disabled if she had been diagnosed with Sjogren's syndrome prior to the

23  date last insured is not grounded in the ALJ's statements at the hearing or his written decision. The

24  ALJ's decision *does* consider Plaintiff's rheumatology records. The ALJ discussed Dr. Lim's

25  functional capacity opinion and contrasted it with his treatment notes. Plaintiff's argument that the

26  ALJ did not consider her rheumatology records and that he found her impairments non-severe

27  because of the date of diagnosis are without ground. Further, Plaintiff has not demonstrated that

28  she was disabled by Sjogren's syndrome during the relevant time. The ALJ properly considered

1  Plaintiff's Sjogren's symptoms during the relevant time, her rheumatology records, and her

2  Sjogren's syndrome diagnosis in making his step-two determination.

3       D.  Consideration of Treating Physician Win Minn Lim, M.D.'s Opinion

4       Plaintiff argues that the ALJ improperly dismissed treating rheumatologist Win Minn Lim,

5  M.D.'s opinion because it was issued in 2013. This argument mischaracterizes the ALJ's decision.

6  Here, the ALJ gave little weight to Dr. Lim's opinion because it is based on the diagnosis and

7  progression of symptoms that occurred after the date last insured, *and* because the opinion is

8  inconsistent with his overall treatment records. The ALJ points to Dr. Lim's records that indicate

9  Plaintiff's ability to walk four miles three times a week and provide care for her spouse. This

10  contradicted Dr. Lim's opinion rendered in the same month that she could only sit for two hours

11  and stand for forty-five minutes at a time.

12       The court must consider whether the Commissioner properly rejected a medical opinion by

13  assessing whether (1) contradictory opinions are in the record; and (2) clinical findings support the

14  opinions. The ALJ may reject the uncontradicted opinion of a treating or examining medical

15  physician only for clear and convincing reasons supported by substantial evidence in the record.

16  *Lester*, 81 F.3d at 831. The controverted opinion of a treating or examining physician can only be

17  rejected for specific and legitimate reasons supported by substantial evidence in the record.

18  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must set forth a detailed and

19  thorough factual summary, address conflicting clinical evidence, interpret the evidence and make a

20  finding. *Magallanes*, 881 F.2d at 751-55. The ALJ need not give weight to a conclusory opinion

21  supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999);

22  *Magallanes*, 881 F.2d at 751. The ALJ must tie the objective factors or the record as a whole to

23  the opinions and findings that he or she rejects. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.

24  1988).

25       The ALJ provided legally sufficient reasons to give little weight to Dr. Lim's opinion. Dr.

26  Lim's opinion is based on Plaintiff's symptoms from 2010 and 2011, during which time she

27  treated her. At issue is Plaintiff's disability prior to the date last insured, December 31, 2007.

28  Plaintiff provided sufficient medical records from 2005 through 2008 which reflect her symptoms

1    and treatment during the relevant time. If there were no medical records from the relevant time,

2    the ALJ may have had to look to other medical evidence to infer her symptomology around the

3    time of the alleged onset date. However, Plaintiff sought regular treatment from Dr. Kiesel, who

4    treated her for hip bursitis, arthralgia, myalgia, hypertension, and other occasional complaints. Dr.

5    Kiesel's notes do not reflect disabling pain, as alleged by Plaintiff, but that her hypertension and

6    lipid levels were well-controlled. Plaintiff was not taking prescription pain medication before the

7    date last insured or the hearing date. Plaintiff was taking prescription medication for hypertension

8    and ibuprofen for pain. In addition, the record shows that Plaintiff only had three doctor's

9    appointments in 2007, and had no doctor's appointments between October 2007 and July 2008.

10   Plaintiff presented to the emergency room in 2006 and in 2008, but her course of treatment was

11   not changed.

12        Plaintiff provided sufficient medical evidence during the relevant time prior to and

13   surrounding the date last insured. Dr. Lim's opinion does not make any conclusions or averments

14   regarding Plaintiff's pain or symptoms prior to his treatment beginning in 2010. Hence,

15   considering the specific facts of this case, the ALJ properly rejected Dr. Lim's opinion as

16   irrelevant for the purposes of this claim. Further, his finding that Plaintiff's reported activities in

17   Dr. Lim's notes are inconsistent with Dr. Lim's opinion is supported by the record. Dr. Lim's

18   notes from October 6, 2011 state that Plaintiff is able to walk up to four miles, three times a week.

19   AR 896. This contradicts Dr. Lim's assessment on October 12, 2011 that she is only able to stand

20   for forty-five minutes. Dr. Lim's notes also confirm that Plaintiff has "good relief" with over-the -

21   counter pain medication and was not taking any prescription medication to address pain or

22   Sjogren's syndrome. AR 897. The ALJ properly gave little weight to Dr. Lim's opinion.

23        Overall, the ALJ properly considered the evidence before him in making his finding that

24   Plaintiff did not have a severe impairment that substantially limited her ability to perform work

25   activities during the relevant time period between the alleged onset date and the date last insured.

26   The ALJ's finding at step two is without legal error and supported by substantial evidence in the

27   record.

28

1    **IV.    Conclusion and Order**

2         For the foregoing reasons, the Court finds that the ALJ applied appropriate legal standards

3    and that substantial credible evidence supported the ALJ's determination that Plaintiff was not

4    disabled.  Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative

5    decision of the Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter

6    judgment in favor of the Commissioner and against Plaintiff.

7

8

9    IT IS SO ORDERED.

10   Dated:   __**January 8, 2016**__                    _____**/s/ Sandra M. Snyder**
                                                          UNITED STATES MAGISTRATE JUDGE